THE LAW FIRM OF

# César de Castro, P.C.

ATTORNEY AT LAW

7 World Trade Center, 34th Floor
New York, New York 10007

646.200.6166 Main
212.808.8100 Reception
646.839.2682 Fax
www.cdecastrolaw.com

March 16, 2021

*Via* ECF

The Honorable Nicholas G. Garaufis
United States District Judge
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    *United States v. Sam Resto,* 20 Cr. 350 (NGG)
                  Application for Release Pending Trial

Dear Judge Garaufis:[1]

We respectfully submit this request to release Sam Resto pending trial. This is Mr. Resto's first arrest. He is nearly thirty years old and has served in the United States Navy, as the Chief Operating Officer for a security analysis firm, and most recently as the comptroller for a general contracting company that builds residential properties. Absent his service in the United States Navy, he has been a lifelong New York City resident. While Mr. Resto is charged with an offense relating to endangering the public's safety, with the appropriate release conditions, any minimal risk of flight or danger can be eliminated. Even accepting all of the facts proffered by the government in its August 2020 detention memo, Mr. Resto engaged in an ill-advised act designed to express social outrage over systemic racism towards African Americans in the United States by police. At the time of his arrest, the crux of the government's danger argument was based on its belief that the nationwide protests and civil unrest engulfing the country would be too irresistible for Mr. Resto to refrain from further action. It argued that "[a]mid an environment in which certain protest against law enforcement have continued in New York City, the government respectfully submits that Mr. Resto, if placed on pretrial release, would return to endangering police officers and civilians." Government Detention Memo at Page 6. That concern has been largely mitigated if not eliminated for two reasons: (1) New York City and the country are no longer embroiled in large scale protests, civic unrest, and riots; and (2) Mr. Resto has spent the last seven months in extremely onerous detention conditions – conditions that would deter any first-time offender from re-offending. With respect to the risk of flight, Mr. Resto does not pose any risk of flight. He has no means with which to flee, does not possess any

---

[1] I submit this motion to the Court *via* ECF, however, I will forward this application to the duty magistrate as requested by the Court at our March 10, 2021 status conference.

1

travel documents with which to travel (the government seized his passport), and home detention with electronic monitoring would reasonably ensure that he would return to court.

Accordingly, we join in Pretrial Services' recommendation that Mr. Resto be released on a substantial bond.  We propose that the Court release Mr. Resto on a $150,000 personal recognizance bond secured by 7 financially responsible persons, strict pretrial supervision, and home detention enforced by electronic monitoring.  The proposed co-signers collectively earn nearly $300,000 but, more importantly, represent those that are closest and dearest to Mr. Resto.  They support him both financially and emotionally and their moral suasion will further ensure that he abides by the conditions of his bond.

**I.      The Legal Standard**

Pretrial detention is confined to a "limited group of offenders."  *See United States v. Saehan*, 493 F.3d 63, 75 (2d Cir. 2007)(citing *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987)(quoting S.Rep. No. 98-225, at 7 (1984), as reprinted in 1984 U.S.C.C.A.N. 3182, 3189)).  Bail should only be denied in "extreme cases."  *United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. 1986)(citing *United States v. Abrahams*, 575 F.2d 3 (1st Cir. 1978)).

Judges deciding whether to grant or deny a defendant release pending trial are "well to remember the magnitude of the injury that pretrial detention inflicts and the departure that it marks from ordinary forms of constitutional governance."  *United States v. Montalvo-Murillo*, 495 U.S. 711, 723 (1990) (Stevens, J., dissenting, joined by Brennan and Marshall, JJ.).  In determining whether "there are conditions of release that will reasonably assure the appearance of the person and the safety of the community, the court is to consider the factors laid out in section 3142(g) of the Bail Reform Act, 18 U.S.C. §§ 3141, et seq.  Critically, "[t]he law requires reasonable assurance but does not demand absolute certainty, which would be only a disguised way of compelling commitment in advance of judgment." *United States v. Alston*, 420 F.2d 176, 178 (D.C. Cir. 1969).

At all times, the ultimate burden of persuasion rests with the government.  *Id*.  The government cannot simply rely on the alleged commission of a serious crime and a potential lengthy prison sentence to justify detaining a defendant based on risk of flight.  *See United States v. Friedman*, 837 F.2d 48, 50 (2d Cir. 1988)(noting that in other cases dealing with risk of flight, the Second Circuit has "required more than evidence of the commission of a serious crime and the fact of a potentially long sentence to support a finding of risk of flight.")

The factors set forth in the Bail Reform Act are: (1) the history and characteristics of the defendant; (2) the nature and circumstances of the offense; (3) the weight of the evidence; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g).  The fact that the defendant faces a mandatory minimum sentence if convicted does not justify his detention when, like here, the defendant presents the Court with evidence of his roots in his community.  *See United States v. Martir*, 782 F.2d 1141, 1146 (2d Cir. 1986); *see also Friedman*, 837 F.2d at 50.

Furthermore, a district court must consider and articulate on the record the extent to which it considered any alternatives to incarceration and, if so, on what basis they were rejected because many courts have set bail for defendants despite a flight risk. *See Berrios-Berrios*, 791 F.2d at 251 (citing several cases in which bail set for defendants with significant flight issues – *United States v. Bigelow*, 544 F.2d 904 (6th Cir. 1976), *United States v. Wright*, 483 F.2d 1068 (4th Cir. 1973), and *United States v. Soto Rivera*, 581 F. Supp. 561 (D. P.R. 1984)).

## II. Mr. Resto is Not Among the Limited Group of Offenders For Which Pre-Trial Detention is Necessary or Appropriate

Mr. Resto does not pose an unreasonable risk of flight or danger to the community. Mr. Resto's history and characteristics establishes that, but for this offense, he has led a largely law-abiding life. Since graduating high school, he has been gainfully employed. He served in the United States Navy and obtained multiple promotions. He worked his way up at a security analysis firm ultimately getting promoted to Chief Operating Officer. He then worked his way up to Comptroller at Lighthouse Builders. He volunteered his time and helped build the website for the Columbia School Linguistic Society at Columbia University. And he regularly tutored his ten-year-old niece on the weekends. He is far from a danger to the community or a flight risk. Even accepting all of the government's facts as true, one night of behavior is not a basis to deny him bail if there are adequate safeguards in place to protect the public and ensure his return to court. With the professional guidance and supervision of Pretrial Services as well as the moral suasion of those closest to him who would serve as co-signers to any personal recognizance bond, this Court can have the appropriate level of comfort to release Mr. Resto.

### 1. Mr. Resto is Not a Flight Risk

Mr. Resto does not pose any risk of flight. The government's argument on flight is based on (1) that he had his passport in his possession at the time of his arrest, and (2) Mr. Resto's statements to law enforcement that he was intending to flee coupled with a message written on the wall of his apartment. The government's arguments fail to establish Mr. Resto's *current* ability and risk of flight for several reasons. First, Mr. Resto no longer has access to any travel documents. The government is in possession of his passport. Second, he has no means by which to flee. Third, the government fails to include additional statements by Mr. Resto to agents that he had no concrete plans to flee and that the message on his apartment wall was intended to lead agents to believe that he had fled the state or country when he had not. Certainly, this conduct suggests that he was willing to flee *apprehension* but with the government's possession of his passport and home detention enforced by electronic monitoring, any risk that Mr. Resto will not answer to this Court is virtually eliminated. Mr. Resto has strong ties to the New York community – he has no ties to anyone outside the country. He is very close to his mother and sister and to the other five proposed co-signers who will support him economically (until he can obtain employment) and emotionally but, most importantly, provide the appropriate moral suasion to ensure his compliance with his bond conditions.

Bail in this case is appropriate. Detention is not necessary. Mr. Resto is entitled to the least restrictive condition or combination of conditions that will reasonably assure his appearance in

this Court. A robust set of bail conditions like those proposed by the defense is sufficient to assure Mr. Resto's return to Court.

> 2. Mr. Resto Does Not Pose a Danger to the Community and Any Potential Danger is Eliminated with Strict Pretrial Supervision and Home Detention Enforced By Location Monitoring

At the time of his arrest and presentment in August 2020, the government moved for his detention largely based on danger to the community. Its argument rested on the fact that the nature of his alleged conduct amid the environment of civic unrest, protests, and riots posed an unreasonable risk to the community that Mr. Resto would engage in similar conduct if released. Even accepting that argument as true, it is no longer relevant. Mr. Resto has been detained and held at the Metropolitan Detention Center ("MDC") since August 2020 in onerous conditions. He has spent the past seven months in various forms of lockdown due to the Bureau of Prisons' necessary response to the COVID-19 pandemic. In the outbreak that occurred at the MDC earlier this year, Mr. Resto contracted COVID-19 and he suffered from its effects alone and without the support of his family. Like most of the inmates at the MDC for more than one year now, Mr. Resto has not had a single visitor. He has had to endure the experience of being arrested and detained for the first time in his life with virtually no support network. He has been a model inmate. He has had no disciplinary infractions. He has been trying to spend his time reading and bettering himself. The circumstances of his detention for the past seven months have eliminated any of the risks present at the time of his arrest in this case.

As Chief Judge Brodie and several other jurists recognized in a similar but more serious case pending in the district, bail with home detention and sufficient co-signers is appropriate and will deter the defendant from engaging in any further similar conduct. *See United States v. Mattis*, 20 MJ 403 (MKB), Transcript of June 1, 2020 bail hearing at 15-16. Chief Judge Brodie specifically held in that case which involved the throwing of Molotov Cocktails into a police cruiser during protests:

> I also believe that one night of behavior is not a basis to reject someone's ability to make rational decisions and that home detention assured by the plaintiff [*sic*] and the well-being of his entire family and several high earning colleagues and friends should be an adequate deterrent for further danger to the community even assuming the accuracy of every allegation of the government in its complaint.

*Id.* Chief Judge Brodie was affirmed on appeal by the United States Court of Appeals for the Second Circuit. *See United States v. Mattis and Rahman*, 20-1713. To my knowledge, the defendants in that matter have not violated the terms of their bail.

Furthermore, as noted by Chief Judge Brodie, home detention is a powerful tool and the published statistics establish its ability to safeguard the community. *See* Federal Location Monitoring, United States Court, https://www.uscourts.gov/services-forms/probation-and-pretrial-services/supervision/federal-location-monitoring ("99 percent of pretrial defendants on federal location monitoring remain free of any arrest for a violent offense during supervision."). Mr. Resto does not pose a risk to the safety of the community and he is entitled to the least

restrictive bail conditions that will protect the public and ensure his appearance in court. The proposed bail conditions more than adequately achieve that goal.

   3.  The Proposed 7 Bond Co-Signers Further Mitigate Any Concerns Regarding Mr. Resto's Danger to the Community

Coupled with the aforementioned proposed conditions, the approval of the following 7 co-signers should give the Court sufficient comfort that Mr. Resto will not absent himself from these proceedings and the community will not be in danger.

| Name | Relationship to Mr. Resto | Employment | Approx. Earnings |
|---|---|---|---|
| Gladys Resto | Mother | Safety Officer – Hunter College | $43,000 |
| Gladys Resto | Grandmother | Retired – SS Income | $20,000 |
| Kristina Khalifeh | Sister | Stay at Home Mom - Disability | $12,500 |
| Christopher Dumayag | Sister's Boyfriend | Registered Nurse - Mount Sinai | $45,000 |
| Dinorah Resto | Aunt | Laid off from Century 21 due to COVID-19 – Now Unemployment | $59,000 pre-COVID |
| Sabreen Duqmaq | Cousin | Amazon Prime and Investigator for New York City | $50,000 |
| Sadat Agovic | Mother's Boyfriend | Maintenance Worker | $60,000 |
| | | | |
| **Total** | | | **$289,500** |

These bond co-signers not only help secure the bond but they will also exert moral suasion over Mr. Resto to ensure his compliance with his bail conditions. Coupled with the aforementioned conditions, these co-signers sufficiently mitigate any concerns regarding the safety of the community.

## III. Conclusion

Mr. Resto should be released on a $150,000 personal recognizance bond secured by 7 financially responsible persons, strict pretrial supervision, and home detention enforced by electronic monitoring. The proposed co-signers collectively earn nearly $300,000 but, more importantly, represent those who are closest to Mr. Resto and can exercise moral suasion over him to ensure his compliance with the conditions of release. The proposed bail package eliminates any real risks of flight or danger to the community.

Respectfully submitted,

 /s/
César de Castro

cc: Francisco Navarro
     Sarah Winik
     (Assistant United States Attorneys *via* ECF)