# Exhibit A



Wilson Sonsini Goodrich & Rosati
Professional Corporation

1301 Avenue of the Americas
40th Floor
New York, New York 10019-6022

O: 212.999.5800
F: 212.999.5899

October 6, 2022

<u>Via Email</u>

Ms. Shayna Bryant
Senior United States Probation Officer
Eastern District of New York

    Re:    United States v. Sam Resto: 1:20CR00350(S-1)-001 (NGG)
             <u>Corrections and Objections to Presentence Report</u>

Dear Ms. Bryant:

    Pursuant to Federal Rule of Criminal Procedure 32(f), the undersigned counsel, on behalf of Sam Resto, submits the following corrections and objections to the Presentence Investigation Report (the "PSR") prepared in connection with Mr. Resto's sentencing. We are happy to provide you with citations to and copies of evidence that provide the support for any of the factual assertions set forth below that may be disputed. We do not object to the Probation Department's Guidelines calculation or the application of the terrorism enhancement, which are commensurate with Mr. Resto's plea agreement.

    We very much look forward to meeting with you to discuss these matters once you have had an opportunity to review this submission.

**PART A. THE OFFENSE**

    3.    We object to the characterization of Mr. Resto as having "planned multiple targeted and violent attacks on law enforcement officers and the City of New York for the purpose of promoting anarchist views and an anti-law enforcement agenda." Beyond participating in the prevalent protests in the wake of the killing of George Floyd, the government's proffered evidence makes clear that the only acts Mr. Resto intended to carry out were various acts of vandalism, including the instant offense, and that the purpose of those acts was to protest against racial injustice and unfair abuses of the justice system by law enforcement, not to harm anyone. *See, e.g.*, RESTO_000082 (Aug. 11, 2021 recording) at 01:33:20

[redacted]

Ms. Shayna Bryant
Senior United States Probation Officer
October 6, 2022
Page 2 of 9

        [REDACTED]). The instant offense—targeting an unoccupied New York City Police Department ("NYPD") vehicle on an empty street in the early hours of the morning—was explicitly designed not to harm anyone, including law enforcement officers.

4. The vandalism at Washington Square Park was intended to symbolize the harm suffered by victims of police brutality, not to indicate plans to engage in any future violence.

5. While Mr. Resto discussed damaging the statute of Christopher Columbus in Central Park, Mr. Resto never actually made any attempt to destroy or damage it, and voluntarily abandoned any plans to damage or pull down the statute.

   Mr. Resto did not purchase the 10 paintball guns he discussed ordering.

   Mr. Resto never made any attempt to use a laser pointer to "punctur[e] the tires of NYPD vehicles or to take aim at an NYPD helicopter."

   Mr. Resto never organized or participated in any looting of retail stores.

6. Mr. Resto never purchased or used smoke bombs in any capacity.

7. Mr. Resto did not purchase the crossbow as part of the plan to pull down the statute in Central Park, or with any intent to use it to harm law enforcement officers or anyone else. He legally purchased the crossbow purely for recreational purposes and wholly separate from his involvement in the racial justice protests. Mr. Resto told one of the undercover officers multiple times that he did not intend to bring the crossbow to any protests. *See, e.g.*, RESTO_000224 (July 19, 2020 undercover recording) at 01:53:48 ([REDACTED]; RESTO_001292 (July 9, 2020 undercover report) [REDACTED]

   Mr. Resto did not purchase the airsoft rifle and paintball guns with the intent to use them to harm law enforcement officers or anyone else. The airsoft rifle and paintball guns were intended to damage surveillance cameras, not to cause any bodily injury, and Mr. Resto never even took them out of his home. *See* RESTO_001292 (July 9, 2020 undercover report). Further, Mr. Resto purchased vests and whistles, which individuals involved in the statute pull-down effort

Ms. Shayna Bryant
Senior United States Probation Officer
October 6, 2022
Page 3 of 9

would wear to guide pedestrian traffic away from the area to avoid any harm to bystanders. *See, e.g.*, RESTO_001320 (July 21, 2020 undercover report). Again, as noted, any plans to pull down the statute in Central Park were voluntarily abandoned by Mr. Resto.

Mr. Resto never possessed or attempted to purchase or create thermite, and his abandoned plan to pull down the statute at Central Park focused primarily on using ropes.

8. Mr. Resto did not make any attempt to burn down or cause any damage to Central Park.

   Mr. Resto did not create any Molotov cocktails or make any attempt to harm police officers. Mr. Resto and undercover officers discussed lighting a fire behind a police vehicle stationed at the statute in Central Park to distract the officer from his post so that the protestors could pull down the statue. Mr. Resto expressed to the undercover officers that lighting such a fire might be considered by prosecutors to be attempted murder, but stated that he would consider the idea of lighting the fire since he did not intend to harm officers and only to distract them.

9. We object to the characterization of Mr. Resto's discussions as relating to "increasingly destructive and violent plans[.]"

   Mr. Resto did not take "substantial steps to carry out" any further planned acts of vandalism beyond lighting a trashcan on fire in Bay Ridge on July 12, 2020 (PSR ¶ 10); spray painting vehicles in Manhattan on July 17, 2020 (*id.* ¶ 13); and the instant offense on July 29, 2020.

10. Mr. Resto voluntarily abandoned any plan to light an NYPD vehicle on fire on July 12, 2020.

11. Mr. Resto did not make the statement "that he wanted to go to Bay Ridge and 'burn it down' in retaliation, but that there were too many police in the area to execute his plan." Undercover reports demonstrate that another individual (whose name is redacted) made this statement. *See* RESTO_001296.

   We further note that the undercover officers embedded alongside Mr. Resto often used similar provocative language. *See, e.g.*, RESTO_000096 (July 12, 2020 undercover recording) at 05:54:50 (███████████████████████
███████████████████████████████████████████████

-3-

Ms. Shayna Bryant
Senior United States Probation Officer
October 6, 2022
Page 4 of 9



); RESTO_000234 (July 22, 2020 undercover recording) at 01:30:40 ( ; RESTO_000254 (July 28, 2020 undercover recording) at 00:46:25 ( ).

Mr. Resto did not make any attempt to set the Brooklyn Bridge on fire.

12. Mr. Resto did not state that he intended on "seeing officers bleed[.]" His statement was in the past tense, and regarded having already seen injured officers on the Brooklyn Bridge during his July 15, 2020 arrest for obstruction of traffic. *See* RESTO_001303 (July 15, 2020 undercover report).

We object to the use of the word "plot," particularly because it is vague as to what alleged actions it might be referring to, if any.

13. We object to the phrase "Over the next few weeks," as Mr. Resto committed the instant offense on July 29, 2020, less than two weeks from July 17, 2020.

Mr. Resto did not spray paint the vehicles with the word "kaboom" with the intention of having a bomb squad respond. After spray painting the police vehicle on East 22nd Street, Mr. Resto walked back towards City Hall with two undercover officers, and they realized after the fact that the message might be considered a bomb threat.

14. Mr. Resto did not possess or attempt to purchase or create any caltrops. Mr. Resto did not possess or attempt to purchase or create any explosives.

Mr. Resto obtained copies of the Anarchist Cookbook at the request of one of the undercover officers. Mr. Resto printed two copies at the office of his workplace, one initially published in the 1970s and a newer edition, the latter of which he gave to the undercover officer. The copy of the older edition was left in Mr. Resto's workplace and was recovered by officers after his arrest.

Mr. Resto's statement about shooting officers was made in the context of having seen videos of plainclothes federal officers apprehending protesters and forcibly detaining them in unmarked vehicles. Mr. Resto expressed that in such a situation, if you did not know that you were being arrested by law enforcement officers and believed you were being kidnapped, it would be reasonable to defend

Ms. Shayna Bryant
Senior United States Probation Officer
October 6, 2022
Page 5 of 9

        yourself. Further, Mr. Resto did not himself own a gun, or intend to purchase one.

15. During the evening of the instant offense, one of the undercover officers texted and called Mr. Resto multiple times to urge him to come out and protest. Mr. Resto finally agreed to the undercover officer's requests. By approximately 3:00 a.m., Mr. Resto had decided to give up on pursuing any act of vandalism for the night and had ordered an Uber to go home. Mr. Resto felt that the undercover officer did not want him to go home. Right before the Uber arrived, Mr. Resto decided to check one last time for a suitable vehicle to vandalize – *i.e.*, an unoccupied vehicle on an empty street. It was at that point that Mr. Resto found the NYPD Vehicle on West 83rd Street.

    We further note that the NYPD Vehicle was specifically targeted because it was unoccupied and on a street that Mr. Resto believed was empty of any passersby, with the intention of damaging only the vehicle. The two undercover officers, who the only other people with Mr. Resto at that point, were tasked with being lookouts by Mr. Resto specifically to make sure that there were no bystanders that would interrupt the vandalism or potentially be hurt.

    We object to the characterization of the NYPD Vehicle as having sustained "significant damage." Body cam videos demonstrate that NYPD officers responded to the fire within 1-2 minutes, and by the time they arrived, the flames were minimal (such that an officer was able to put out whatever was left smoldering in the interior of the NYPD Vehicle with a single fire extinguisher). *See* RESTO_001372 (body cam video of responding officer). The same video shows shattered glass and scorching to the steering wheel, dashboard, and driver's seat, but the vehicle's lights and car alarm are still functioning. *See id.* The New York City Fire Department ("FDNY") report from the incident indicates the fire was extinguished by the NYPD before the FDNY arrived, and states: ▮▮▮▮

    RESTO_001078-80.

19. Mr. Resto gave the noted materials to the undercover officer to hold them while Mr. Resto was moving, not to conceal those materials from law enforcement.

    We object to the header "The Defendant's Continued Efforts to Organize Violent Action Against the NYPD," as the acts of vandalism and protest organized by Mr. Resto were intentionally non-violent. *See* Objection to PSR ¶ 3.

Ms. Shayna Bryant
Senior United States Probation Officer
October 6, 2022
Page 6 of 9

21. We object to the statement "Following the July 29, 2020 arson, the defendant continued to plan future attacks on NYPD vehicles," as there were no specific plans put in place or vehicles targeted to be destroyed after the instant offense.

    Mr. Resto did not possess or attempt to purchase or create any napalm. One of the undercover officers proposed using napalm on the tires of police vehicles as part of the subsequently-abandoned plan to pull down the statute in Central Park, but Mr. Resto declined to include it in the plan.

    We object to the statements that the purpose of the so-called "Geronimo" organization—which was never actually created, *see* PSR ¶ 22—was to "carry out coordinated attacks" and "cause mayhem and violence in New York." The specific intention of the proposed group was to engage in vandalism and property damage only, and not to cause any physical harm to anyone. *See* Objection to PSR ¶ 3, *supra*. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

    This paragraph also omits that Mr. Resto's knowledge of the organizational structures of terrorist organizations was related to his prior work at Recumen, LLC, which the PSR describes as a "security/intelligence firm." PSR ¶ 67. Mr. Resto was specifically tasked with analyzing the organizational structures of loosely-organized groups such as cartel networks and terrorist cells as a part of his job.

24. We do not object to the calculation of the base level offense, but object to the inclusion of "passersby" in the description of who and what occupied the street when the instant offense occurred, as there is no evidence of such. As noted above, the two undercover officers were tasked with acting as lookouts during the instant offense specifically to make sure there were no passersby nearby at the time of the offense.

25. We do not object to Probation's application of the terrorism enhancement under USSG § 3A1.4(b), but object to the description of "Geronimo" (which was never created) as a "terrorist organization." *See* Objection to PSR ¶ 21, *supra*.

Ms. Shayna Bryant
Senior United States Probation Officer
October 6, 2022
Page 7 of 9

> 28. The value of the NYPD Vehicle at the time of the offense was $14,065.35, not $24,065.35. *See* PSR ¶ 29 (noting that NYPD Affidavit of Loss "reflects that the agency reported a loss of $14,065.35.").

**PART B. THE DEFENDANT'S CRIMINAL HISTORY**

> 48. We believe that the charges relating to Mr. Resto's July 10, 2020 arrest involving a parking dispute with a neighbor may have been dismissed, and are working to get more information from the New York State Office of Criminal Justice Records.

**PART C. OFFENDER CHARACTERISTICS**

> 53. Mr. Resto's sister's name is Kristina.
>
> 60. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
>
> 65. Stated income of "$570,000 gross per year" should be corrected to $70,000.
>
> 67. Ms. Sackler's name should be spelled "Jaseleen" instead of Jocelyn.
>
> 69. Mr. Resto received a general discharge from the United States Navy, not a dishonorable discharge. He received the following commendations: Navy "E" Ribbon; National Defense Service Medal; Global War on Terrorism Expeditionary Medal; Global War on Terrorism Service Medal; Sea Service Deployment Ribbon; Pistol Marksmanship Ribbon.

**PART D. SENTENCING OPTIONS**

No corrections or objections.

Ms. Shayna Bryant
Senior United States Probation Officer
October 6, 2022
Page 8 of 9

**PART E. FACTORS THAT MAY WARRANT DEPARTURE**

86. Not all these materials were seized from Mr. Resto's apartment on August 13, 2020. Some of the materials were given by Mr. Resto to an undercover officer approximately two weeks prior to his arrest.[1]

89. Mr. Resto voluntarily abandoned any plan to light an NYPD vehicle on fire on July 12, 2020.

    As noted above, we do not object to Probation's application of the terrorism enhancement but do object to the characterization of the never-formed "Geronimo" group as a "terrorist organization."

**PART F. FACTORS THAT MAY WARRANT A SENTENCE OUTSIDE OF THE ADVISORY GUIDELINE SYSTEM**

No corrections or objections.

\*     \*     \*

As noted above, we look forward to the opportunity to address these issues with you at your earliest convenience.

---

[1] The same error is present in the plea agreement, which notes that all of the seized items were recovered Mr. Resto's apartment on August 13, 2020. *See* Plea Agreement ¶ 6. We do not object to the forfeiture of these items, as agreed to in the plea agreement, and are just seeking to clarify the location where the items were seized.

Ms. Shayna Bryant
Senior United States Probation Officer
October 6, 2022
Page 9 of 9

                                          Respectfully submitted,

                                          WILSON SONSINI GOODRICH & ROSATI
                                          Professional Corporation

                                          <u>s/ *Morris J. Fodeman*</u>
                                          Morris J. Fodeman
                                          Jessica Lonergan

                                          *Counsel for Defendant Sam Resto*

cc:    AUSA Francisco J. Navarro (via email)
        AUSA Artie McConnell (via email)
        AUSA Sara Winik (via email)